UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHESTER RAYMOND BODMAN,

        Plaintiff,                      Case No. 1:11-cv-600

v.                                       Honorable Gordon J. Quist

DWAIN DENNIS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Dennis, Jones, Johnson, Piefer, Winters, Dolittle, Little, Merrit, Ferris, Barr, Rickert, Livingston, Hopkins, Perry, Pline, and Officer Lisa (last name unknown). The Court will serve the complaint against Defendants Pieters, Myer, Hoskins, and Badder.

**Discussion**

I.        Factual allegations

Plaintiff Chester Raymond Bodman presently is incarcerated at the Saginaw Correctional Facility, though the actions about which he complains occurred while he was housed at the Ionia County Jail. He sues Ionia County Sheriff Dwain Dennis and the following employees of the sheriff's department and jail: Lieutenant (unknown) Jones; Officers Jack Pieters, Travis Myer, Hughe Johnson, Rick Piefer, Patricia Winters, (unknown) Little, Ashley Badder, John Barr, Robert Ricker, Lisa (last name unknown), (unknown) Livingston, Troy Hopkins, (unknown) Perry, and Barb Pline; Sergeants Stanley Hoskins, (unknown) Dolittle, (unknown) Merrit, and Bill Ferris; and an unknown jail nurse.

On November 19, 2009, Plaintiff was involved in a serious car accident in which he was knocked temporarily unconscious. The driver of the other vehicle was transported by Aeromed, but Defendants Pieters, Hoskins and Myer did not provide Plaintiff with medical treatment, but instead arrested Plaintiff and booked him at the jail. Plaintiff does not remember much about after the crash, including the arrest, booking, fingerprinting, or interrogation. Family members called the jail, asking that Plaintiff be provided medical treatment, but he was not given treatment.

When Plaintiff awoke in the holding cell, he realized that his lip had been cut through by his tooth, that his chest was sore, and that his nose was broken. He asked to see the jail nurse. Defendant nurse gave Plaintiff peroxide with which to gargle. She told Plaintiff that chests usually hurt after hitting a steering wheel and that there was nothing she could do for Plaintiff's nose. Plaintiff claims that his lip healed, but his chest is still painful and "pops" when he pulls his shoulders back. Plaintiff's nose is still broken and a bone obstructs his right nasal passage. Plaintiff also gets bad headaches on the right side and above that eye.

At noon on January 1, 2010, Plaintiff had a seizure for the first time in his life. Defendant Officers Rickert, Barr, and Johnson responded, placing Plaintiff in a holding cell overnight. Plaintiff was not given medical treatment. He had a large lump on his head and his body was sore all over. A couple of days later, Defendant nurse brought Plaintiff a medical slip stating that he could not climb stairs and required a bottom bunk. Two weeks later, Defendant Badder moved Plaintiff from his bottom bunk in Cell #1 to a top bunk in Cell #3. Badder disregarded Plaintiff's bottom-bunk detail, saying she "needed that bunk" and Plaintiff "would be all right." (Compl., docket #1, Page ID 7.) On March 29, 2010, Plaintiff had a second seizure, during which he fell off his top bunk, landed on his head, and urinated on himself. He was transported to Ionia County Memorial Hospital in a neck brace and on a back board. Plaintiff alleges that Defendant Little attempted to interfere with his care by showing Plaintiff's rap sheet to the Emergency Medical Technician, doctors, and nurses. Despite the fact that Little was informed by medical personnel that his charge sheet was irrelevant to their care, Plaintiff believes Little's conduct contributed to a very short emergency room visit. Plaintiff alleges that he had a badly swollen head on the left side and could not move his neck much. Plaintiff has no recollection of the seizure.

After Plaintiff returned to the jail, he was placed in a holding cell. The nurse came to his cell that same day, yelling at Plaintiff for failing to use the bottom-bunk detail she had given him. Plaintiff explained that Badder had forced him to stay on the top bunk, notwithstanding the order. The nurse then left him alone. The following day, Plaintiff was taken to the Carson City Hospital for an EEG. Plaintiff complains that he was not asked or notified that he would be going, but he was later charged $5,000.00 for his medical bills. Plaintiff slept on the floor of the holding cell for five days. He asked to be allowed to sleep on the bunk, but the sergeant informed Plaintiff that the nurse had not yet cleared him for a bunk.

On April 3, 2010, Plaintiff visited with his grandfather, but the jail refused to allow Plaintiff's children to visit. Plaintiff claims the denial of visitation with his children is not authorized by policy. That same date, Plaintiff wrote a medical request because his pinky and ring finger kept going numb. He received no response.

On April 5, 2010, Plaintiff asked Defendant Sergeant Merrit if he could get a shower. Merrit told Plaintiff that he would see what he could do. Merrit went off duty before Plaintiff received a shower. Plaintiff also asked if he could be moved to a bunk off the floor. Merrit told him that he would have to call the nurse at home to ask her. When the second-shift Sergeant, Defendant Dolittle, arrived, Plaintiff asked the same question. After eight days of sleeping on the floor and receiving no shower, Plaintiff was transferred to A-Unit, which allegedly is a punishment unit and the worst place in the jail. Plaintiff contends that he is being punished for having a seizure. The following day, another prisoner with a known seizure disorder was placed in the bunk above Plaintiff.

Plaintiff alleges that he sent multiple medical request forms, all of which were ignored until Plaintiff became "cocky." (*Id.*, Page ID#9.) On April 9, 2010, the nurse called Plaintiff into her office for the first time since April 1, 2010. She provided Plaintiff a stool softener to treat rectal bleeding, and she offered Plaintiff Motrin for his neck and back pain. Plaintiff refused the Motrin because it did not work. Defendant Nurse allegedly asked why Plaintiff had been sending her rude medical forms, and he demanded to know why she had not responded. The nurse advised Plaintiff that she had more medical testing scheduled, but she would not help him if he sent any more rude request forms. She also threatened to send him back to the holding cell for eight more days.

Plaintiff eventually moved back into the B-Unit. He alleges that other inmates assisted him by making his bunk, getting his food trays, and taking care of his possessions. Plaintiff, however, received no additional health care treatment. He also complains that, during the whole of the incident, the jail failed to inform Plaintiff's family. On April 16, 2010, Plaintiff requested an extra mat to support his back. The nurse informed Plaintiff that the medical department did not give out extra mats, though Plaintiff has witnessed other inmates being given two mats because they had bad backs.

Plaintiff alleges that Defendant Piefer came to his bunk on April 22, 2010, asking if Plaintiff was still alive, as he had not been off his bunk for the whole month. Plaintiff told Piefer, "I'd rather be dead." (*Id.*, Page ID#10.) On April 25, Officer Marstin (who is not named as a Defendant in this action) asked Plaintiff if he was feeling better because he looked terrible. A few days later, on May 1, 2010, Defendant Piefer came to Plaintiff's cell, again asking how Plaintiff was doing and whether he was going to die. Plaintiff answered, "I would be living," and Piefer "said good because he did not want to do all that paperwork." (*Id.*, Page ID#11.) Defendant Winters came to Plaintiff's cell on May 4, asking if his back still bothered him. Plaintiff told Winters that his back was better but his neck was worse. Winters asked if the nurse had put Plaintiff on medication. Plaintiff said that the nurse had offered Motrin, but he told her to keep the pills because they were ineffective. Winters agreed that Motrin was not helpful, and she asked if Plaintiff had been back to the doctor. Plaintiff informed Winters that the nurse had told him he would receive more testing, but that had been more than a month before. Winters said, "Good."

On May 6, 2010, just when Plaintiff had begun to feel somewhat better, he pulled something in his back that put him back where he started. If he moved, it took his breath away. He could not get off his bunk again. Defendant Piefer came in and asked if Plaintiff was dead. Plaintiff

told Piefer that he was in bad shape and could not even get up to change his jumpsuit. Plaintiff asked Piefer not to put him back in a holding cell because it was harder to get up from the floor than from the bunk. Piefer apparently told Defendant nurse, who came to Plaintiff's cell to ask what the problem was. Plaintiff told her that he was still suffering from the fall and that he must have reinjured his back. He asked about when he would get more medical testing. The nurse did not respond to the question, but she gave Plaintiff Aleve for his back pain.

Sometime later, Defendant Johnson came to Plaintiff's cell and asked if he was alright and whether the nurse had done anything for him. Johnson told Plaintiff that he could not believe that Plaintiff was still in such bad shape. On May 10, Plaintiff's back began to feel somewhat better. Officer Perry came to his cell and asked if he would like a medical request form. Plaintiff told Perry that the request forms only worked if the nurse responded. But Plaintiff acknowledged that he had seen the nurse and she gave him Aleve.

On May 14, 2010, Officer Marstin again asked about Plaintiff's health and told him that he looked terrible. On May 16, 2010, Defendant Pline came to his cell to inquire how he was feeling. On May 19, 2010, Defendant Piefer allegedly made a joke to other inmates about how Plaintiff walked like an old man. On May 21, Defendant Johnson wondered aloud what would happen if he shook Plaintiff. Later that night, Defendant Winters came to Plaintiff's cell to ask how he was doing. She told him that she could tell he still looked stiff. Plaintiff told Winters that he was documenting everything, and she responded, "Good." (*Id.*, Page ID#12.) When Plaintiff told Winters that the nurse regularly ignored his health requests and promised but failed to get more medical testing, Winters responded, "[T]hat sounds like our nurse and she makes the big bucks."

Plaintiff went to court on May 24, 2010. Officer Cooper accompanied Plaintiff and asked Plaintiff if his chair was comfortable. That night, Defendant Officer Livingston came to

Plaintiff's cell and told him that he thought he could fix Plaintiff's back. Livingston stated that he could tell by the way Plaintiff moved what was wrong with him and that in 15 to 20 minutes, he could make it better. On May 31, Livingston again told Plaintiff that he thought he could fix the problem.

On June 24, 2010, Plaintiff had a third seizure. His bunkmate was so frightened that he asked to be moved. On this occasion, Plaintiff saw his hand begin to shake before the seizure began. Two days later, Defendants Pline and Piefer denied Plaintiff his visitation because he did not come out of his cell. Plaintiff, however, had not been off his bunk in over two months. Plaintiff asked to speak with Defendant Sergeant Ferris. Ferris asked Plaintiff if he was still stiff and if it had gotten worse. Plaintiff told Ferris that he was actually feeling much better. On July 14, 2010, Officer Marstin asked if the nurse had found out what was wrong with Plaintiff's neck yet. Plaintiff replied, "She has done nothing for me or even tried to see me." (*Id.*, Page ID#14.) Plaintiff added that he expected to get proper medical attention once he arrived at the Michigan Department of Corrections.

Plaintiff alleges that, based on these allegations, all Defendants should be held responsible for Plaintiff's pain and suffering as every one of them had knowledge of his injuries.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92

F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Plaintiff fails to mention Defendants Sheriff Dennis, Lieutenant Jones, or Officer Lisa (last name unknown) in the body of his complaint. Plaintiff's claims against these Defendants fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). His complaint against Defendants Dennis, Jones and Lisa (last name unknown) therefore must be dismissed.

Moreover, Plaintiff's allegations against Defendants Johnson, Piefer, Winters, Dolittle, Little, Merrit, Barr, Rickert, Livingston, Hopkins, Perry and Pline are wholly insufficient to state an Eighth Amendment claim. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Although Plaintiff alleges that Defendants Johnson, Piefer, Winters, Dolittle, Little, Merrit, Ferris, Barr, Rickert, Livingston, Hopkins, Perry and Pline were aware of his pain and injury, he makes no factual allegation that would support a conclusion that Defendants were deliberately indifferent to that pain. Each of these Defendants were custody personnel. None of these officers were authorized or qualified to provide medical treatment independent of that ordered by the jail

medical providers. Because custody officers have no authority over medical treatment decisions, Plaintiff fails to create an inference that these Defendants acted with the requisite culpable state of mind. *See Walter v. Eyke*, 417 F. App'x 461, 464 (6th Cir. 2011) (holding that a prison psychologist could not be held responsible under the Eighth Amendment where he had no authority to prescribe the requested drug); *Reid v. Sapp*, 84 F. App'x 550, 552 (6th Cir. 2003) (recognizing that a physician could not be held liable under the Eighth Amendment for failing to authorize surgery when he had no authority to do so); *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 545 (6th Cir. 2003) (holding that a warden could not be held liable for failing to authorize medical care where the warden only had authority over the medical unit with respect to administrative, not medical, matters). Moreover, according to Plaintiff's own allegations, each of these officers inquired about his ongoing symptoms, offered to provide medical request forms, contacted the nurse on his behalf, and routinely expressed sympathy for his condition. Plaintiff makes no allegation that any of these Defendants refused to call the nurse when his condition changed or refused to submit his medical requests. As a consequence, Plaintiff's allegations clearly fail to demonstrate that the officers were deliberately indifferent to Plaintiff's medical needs.

Plaintiff next alleges that, before going off duty on April 5, 2010, Defendant Merrit did not make arrangements for Plaintiff to shower and failed to obtain authorization for Plaintiff to sleep on a bunk. Similarly, Plaintiff alleges that Defendant Dolittle failed to make such arrangements when he came on shift. Plaintiff alleges that, in total, he was not given a shower and slept on the floor for eight days. Even assuming that Defendants Merrit and Dolittle were involved in that neglect on any date other than April 5, 2010, such an allegation falls to rise to the level of an Eighth Amendment violation.

The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981)). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Allegations about temporary inconveniences, e.g, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). Plaintiff's allegation that he was deprived of a shower and made to sleep on the floor for eight days constitutes only a minor inconvenience; it falls short of demonstrating the sort of inhumane conditions that implicate the Eighth Amendment.

Plaintiff also alleges that, on May 19, 2010, Defendant Piefer made a joke to other inmates about how Plaintiff walked, and, on May 21, 2010, Defendant Johnson wondered aloud

what would happen if he shook Plaintiff. Use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Piefer and Johnson arising from their alleged verbal abuse.

Finally, Plaintiff alleges that Defendant Little showed emergency medical providers Plaintiff's list of criminal charges, purportedly in order to get those providers to disregard Plaintiff's medical needs. Plaintiff acknowledges, however, that one or more of the providers specifically told Little that the charges were irrelevant to their treatment, and Plaintiff has alleged no facts that would support a conclusion that Little's conduct had any impact on Plaintiff's care. As a consequence, Plaintiff cannot demonstrate that Little's conduct led to a constitutional deprivation.

For all these reasons, the Court concludes that Plaintiff fails to state a claim against Defendants Dennis, Jones, Johnson, Piefer, Winters, Dolittle, Little, Merrit, Ferris, Barr, Rickert, Livingston, Hopkins, Perry, Pline, and Lisa (last name unknown).

Upon review, the Court concludes that Plaintiff's allegations against Defendants Pieters, Myer, Hoskins, Badder and the unknown Ionia County Jail nurse are sufficient to warrant service of the complaint.[1]

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Dennis, Jones, Johnson, Piefer, Winters, Dolittle, Little, Merrit, Ferris, Barr, Rickert, Livingston, Hopkins, Perry, Pline, and Lisa (last name unknown) will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Pieters, Myer, Hoskins, and Badder.

An Order consistent with this Opinion will be entered.


Dated:  August 24, 2011                                   /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE

---

[1] The Court, however, lacks sufficient identifying information about the unknown jail nurse to permit service at this time.