UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHESTER BODMAN,

        Plaintiff,                         Hon. Gordon J. Quist

v.                                                     Case No. 1:11 CV 600

JACK PIETERS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #23). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**. The undersigned further recommends that Plaintiff's claims against Unknown Party #1 be **dismissed without prejudice** for failure to timely effect service.

## BACKGROUND

Plaintiff Chester Bodman is presently incarcerated at the Saginaw Correctional Facility, though the actions which form the basis of this action concern employees of the Ionia County Jail and Ionia County Sheriff's Department. Plaintiff initiated this action against Ionia County Sheriff Dwain Dennis and the following employees of the Sherriff's Department and County Jail: Lieutenant (unknown) Jones; Officers Jack Pieters, Travis Myer, Hughe Johnson, Rick Piefer, Patricia Winters, (unknown) Little, Ashley Badder, John Barr, Robert Ricker, Lisa (last name unknown), (unknown) Livingston, Troy Hopkins, (unknown) Perry, and Barb Pline; Sergeants Stanley Hoskins, (unknown)

Dolittle, (unknown) Merrit, and Bill Ferris; and an unknown jail nurse. The following allegations are contained in Plaintiff's complaint.

On November 19, 2009, Plaintiff was involved in a two-car accident in which he was knocked temporarily unconscious. While the driver of the other vehicle was transported to a hospital, Defendants Pieters, Hoskins and Myer failed to provide Plaintiff with medical treatment, but instead simply arrested him and transported him to jail.

When Plaintiff awoke in a holding cell, he realized that he had suffered a cut lip, a sore chest, and a broken nose. Plaintiff was examined by the jail nurse who provided Plaintiff peroxide with which to gargle. The nurse told Plaintiff that it was not uncommon for someone's chest to hurt after striking a steering wheel in an accident. She further informed Plaintiff that there was nothing she could do to treat his nose. Plaintiff's lip subsequently healed, but his chest is still painful and "pops" when he pulls his shoulders back. Plaintiff's nose is still broken and a bone obstructs his right nasal passage. Plaintiff also experiences headaches and pain above his right eye.

On January 1, 2010, Plaintiff suffered a seizure. Plaintiff was not provided medical treatment in response to this seizure, but was instead simply placed in a holding cell by Defendants Rickert, Barr, and Johnson. Several days later, an unidentified nurse provided Plaintiff a medical detail stating that he could not climb stairs and required a bottom bunk. Two weeks later, Defendant Badder instructed Plaintiff to move from his bottom bunk to the top bunk in another cell. Badder disregarded Plaintiff's bottom-bunk detail, saying she "needed that bunk" and that Plaintiff "would be all right."

On March 29, 2010, Plaintiff suffered a second seizure, during which he fell out of his top bunk and landed on his head. Plaintiff was transported to Ionia County Memorial Hospital for treatment. Plaintiff alleges that Defendant Little interfered with his care by informing his care providers

of his various offenses. After Plaintiff returned to the jail, he was placed in a holding cell. A nurse later yelled at Plaintiff for failing to use the bottom-bunk detail he was provided. Plaintiff explained that Defendant Badder forced him to use the top bunk, notwithstanding his medical detail. Plaintiff was transported to the hospital the next day to participate in an EEG examination. Plaintiff was thereafter forced to sleep on the floor of the holding cell for five days. When Plaintiff complained, he was informed that the nurse had not yet cleared him for a bunk.

On April 3, 2010, Plaintiff submitted a request for medical treatment because his pinky and ring finger kept going numb. Plaintiff's request went unanswered.

On April 5, 2010, Plaintiff asked Defendant Merrit if he could use the shower. Merrit told Plaintiff that he would look into the matter, but went off duty before providing Plaintiff a response. Plaintiff also asked if he could be moved to a bunk off the floor. Merrit told Plaintiff that he would have to check with the nurse. Plaintiff later asked Defendant Dolittle the same question. After eight days of sleeping on the floor and receiving no shower, Plaintiff was transferred to A-Unit, deemed a punishment unit. Plaintiff was transferred to A-Unit in retaliation for suffering a seizure.

Plaintiff sent multiple medical request forms, all of which were ignored until Plaintiff became "cocky." On April 9, 2010, Plaintiff was examined by a nurse who provided Plaintiff a stool softener. Plaintiff was also offered Motrin, which he declined. The nurse also informed Plaintiff that additional medical tests were scheduled, but that such would be cancelled if he continued to act rudely. The nurse also threatened to send Plaintiff back to the holding cell for an additional eight days. Plaintiff was eventually transferred back to B-Unit. On April 16, 2010, Plaintiff requested an extra mat to treat his back pain. Plaintiff's request was denied.

On May 6, 2010, Plaintiff re-injured his back after which he experienced difficulty moving and getting out of his bunk. Plaintiff was subsequently examined by a nurse who provided him with medication to treat his back pain. On May 19, 2010, Defendant Piefer joked to other inmates about how Plaintiff walked like an old man. Two days later, Defendant Johnson wondered aloud what would happen if he shook Plaintiff. On June 24, 2010, Plaintiff suffered a third seizure.

Plaintiff initiated the present action against the aforementioned Defendants. While not expressly stated, Plaintiff clearly alleges deprivations of his right to medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff has not articulated what relief he seeks. On August 24, 2011, the Honorable Gordon J. Quist dismissed Plaintiff's claims against every named defendant save Defendants Pieters, Myer, Hoskins, and Badder who now move for summary judgment. (Dkt. #8). Judge Quist determined that Plaintiff's allegations against Unknown Party #1 (a nurse) were sufficient to state a claim, but noted that service could not be effected on this party because Plaintiff's pleadings "lack[ed] sufficient identifying information."

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not

change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Injunctive and Declaratory Relief**

Plaintiff has failed to articulate the relief he seeks in this matter.  As previously noted, Plaintiff has sued employees of the Ionia County Jail and Ionia County Sheriff's Department concerning conduct which allegedly occurred while Plaintiff was housed in the Ionia Country Jail.  To the extent that Plaintiff is seeking injunctive or declaratory relief in this matter, such must be denied as moot as Plaintiff is no longer housed in the Ionia County Jail.[1]  *See, e.g., Becker v. Montgomery*, 43 Fed. Appx. 914, 915 (6th Cir., Aug. 13, 2002) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)) ("[a] prisoner's request for injunctive and declaratory relief from corrections officials is moot upon his transfer to a different facility").  The undersigned recommends, therefore, that to the extent Plaintiff is seeking injunctive or declaratory relief such be denied as moot.

**II.       Defendants Pieters, Hoskins, and Myer**

The only allegations in Plaintiff's complaint against Defendants Pieters, Hoskins, and Myer are that they failed to provide Plaintiff with "much needed medical attention" following his November 19, 2009 automobile accident and subsequent arrest.  (Dkt. #1 at ¶¶ 1-2).

The only evidence that Defendants Pieters, Hoskins, and Myer have submitted in support of their motion for summary judgment is copies of police reports allegedly concerning the relevant events.  (Dkt. #24, Exhibits 1-2).  These reports, being submitted to establish the truth of their contents, clearly constitute hearsay.  To the extent, however, that these reports contain information obtained or

---

[1] Plaintiff is presently incarcerated by the Michigan Department of Corrections, at the Saginaw Correctional Facility, serving multiple criminal sentences.  *See* Chester Bodman, available at
http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=511468 (last visited on November 27, 2012).

discerned firsthand by the police officer creating the report, such may be admissible pursuant to the public records exception to the rule against hearsay. *See, e.g., Buchanan v. Mattingly*, 2012 WL 787381 at *3 fn.8 (S.D. Ohio,. Mar. 9, 2012) (citing Fed. R. Evid. 803(8)); *Weinstein v. Siemens*, 2010 WL 4824952 at *2-5 (E.D. Mich., Nov. 22, 2010); *Dortch v. Fowler*, 2007 WL 1672297 at *2 (6th Cir., June 6, 2007).

Any such report or record, however, to be admissible under this (or any other hearsay exception) must first be properly authenticated. *See, e.g., Fox v. Michigan State Police Department*, 173 Fed. Appx. 372, 375 (6th Cir., Feb. 24, 2006) ("the court records and police reports, which were neither sworn nor certified, were not properly authenticated and were therefore inadmissible in evidence"); *Wells v. Cramer*, 399 Fed. Appx. 467, 470 (11th Cir., Oct. 1, 2010) (same). It is well recognized that "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)).

Because the police reports in question have not been properly authenticated, such are inadmissible and cannot be considered in support of Defendants' motion for summary judgment. As previously noted, however, these unauthenticated police reports are the only evidence Defendants have submitted in support of their motion for summary judgment. As Defendants have failed to submit any admissible evidence in support of their motion, Defendants have failed to meet their burden of demonstrating the absence of a genuine factual dispute. Accordingly, the undersigned recommends that the motion for summary judgment by Defendants Pieters, Hoskins, and Myer be denied as to Plaintiff's claims for monetary relief.

**III.  Defendant Badder**

In his complaint, Plaintiff alleges that on an unspecified date in January 2010, Defendant Badder disregarded a bottom bunk detail that Plaintiff had been issued and instead ordered him to sleep in a top bunk. (Dkt. #1 at ¶ 6). Plaintiff also alleges that on or about March 29, 2010, Defendant Badder again ordered him to sleep in a top bunk contrary to the bottom bunk detail which he had been issued. (Dkt. #1 at ¶ 8). While not expressly stated, the Court interprets Plaintiff's allegations as asserting the claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendant Badder's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Id.* However, the Eighth Amendment is

not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that Defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

In support of her motion for summary judgment, Defendant Badder has submitted copies of several kites which Plaintiff allegedly submitted between the dates of November 23, 2009, and March 29, 2012. (Dkt. #24, Exhibits 3-5; Dkt. #25, Exhibits 8-9). Defendant has also submitted treatment records and treatment notes concerning medical treatment Plaintiff received on March 29, 2010. (Dkt. #25, Exhibits 6-7). Defendant Badder asserts that she is entitled to summary judgment because this evidence establishes that Plaintiff "received adequate medical treatment." Defendant's argument badly misses the mark.

Plaintiff is not alleging that Defendant Badder denied him medical treatment, but is instead alleging that Defendant disregarded the instructions of his care providers and, by ordering him to move to an upper bunk, placed him at substantial risk of serious harm. None of the evidence submitted by Defendant Badder advances her position as to this claim. To the contrary, this evidence indicates that jail officials were aware that Plaintiff suffered a seizure on January 1, 2010, resulting in the issuance of the bottom bunk detail. (Dkt. #24, Exhibit 4). Treatment notes dated March 29, 2010, actually support Plaintiff's position that he was ordered to sleep in an upper bunk despite the medical detail issued by his care providers. (Dkt. #25, Exhibit 7). In sum, none of the evidence submitted by Defendant Badder advances her position as to either prong of the analysis. To put it in its simplest

terms, a prison official who places an inmate at substantial risk of serious harm cannot avoid liability for such by later providing medical care when such harm occurs. Accordingly, the undersigned recommends that Defendant Badder's motion for summary judgment be denied as to Plaintiff's claims for monetary relief.

**IV.     Exhaustion**

Defendants next assert that Plaintiff has failed to properly exhaust his administrative remedies. Defendants' argument, again, sorely misses the mark.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See also, Porter v. Nussle*, 534 U.S. 516, 520 (2002) (holding that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences"). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).

In support of their argument, Defendants have submitted absolutely no evidence regarding the administrative remedies available to Plaintiff or, more importantly, whether Plaintiff availed himself of such remedies. Instead, Defendants advance the strange argument that because Plaintiff declined

medical treatment on certain occasions and failed to request medical treatment on other occasions, he, therefore, has failed to properly exhaust his administrative remedies. While such alleged conduct may be relevant to resolution of Plaintiff's substantive claims, such is simply irrelevant when assessing whether Plaintiff properly exhausted his administrative remedies before initiating the present action. As Defendants have failed to carry their burden of establishing that Plaintiff failed to exhaust his administrative remedies, the undersigned recommends that Defendants' motion to dismiss Plaintiff's claims for failure to exhaust be denied.

### V.        Qualified Immunity

Finally, Defendants assert that they are entitled to qualified immunity because "their actions were objectively reasonable." The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation

of a constitutional right." *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 129 S.Ct. at 816. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*,

550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202). Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

The allegations in Plaintiff's complaint against Defendants Pieters, Myer, Hoskins, and Badder state a claim upon which relief may be granted and, as discussed above, Defendants have failed to demonstrate that they are entitled to summary judgment. The right to be free from cruel and unusual punishment through the deprivation of medical treatment or the disregard of instructions by medical professionals was clearly established long before the conduct giving rise to this action. Stated differently, a reasonable official would have known that the conduct alleged by Plaintiff violated the Eighth Amendment. Accordingly, the undersigned recommends that Defendants' motion for qualified immunity be denied.

**VI.**     **Plaintiff's Claim Against Defendant Unknown Party #1**

Plaintiff initiated the present action on June 8, 2011. On August 24, 2011, the Court concluded that Plaintiff's allegations against Unknown Party #1 (a nurse) were sufficient to state a claim, but noted that service could not be effected on this party because Plaintiff's pleadings "lack[ed] sufficient identifying information." More than twelve months have since passed and Plaintiff has yet to identify this particular individual. Plaintiff has neither requested an extension of time to effect service on this person nor sought the assistance of the Court in identifying this person.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own initiative after notice to

the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence in this matter, the undersigned recommends that Plaintiff's claims against Defendant Unknown Party #1 be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #23), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims for injunctive or declaratory relief against Defendants Pieters, Myer, Hoskins, and Badder be dismissed, but that Defendants' motion for summary judgment otherwise be denied. The undersigned further recommends that Plaintiff's claims against Unknown Party #1 be **dismissed without prejudice** for failure to timely effect service.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                  Respectfully submitted,

Date:  December 7, 2012                                  /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge