UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHESTER RAYMOND BODMAN,

        Plaintiff,

v.                                                                                      Case No. 1:11-CV-600

ASHLEY BADDER,                                                     HON. GORDON J. QUIST

        Defendant.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Chester Bodman, a prisoner currently incarcerated with the Michigan Department of Corrections, filed a complaint against Defendant Ashley Badder and others alleging claims under 42 U.S.C. § 1983 arising out of his November 20, 2009 arrest and subsequent detention at the Ionia County Jail. The Court previously dismissed all of Bodman's claims except his claim against Defendant Badder for violation of Bodman's constitutional rights.[1] That claim was tried to the Court on February 4, 2014. The Court heard testimony from Bodman and his witnesses, as well as from Badder and her witness.

### FINDINGS OF FACT

On November 20, 2009, deputies of the Ionia County Sheriff's Department arrested Bodman after he fled the scene of a serious car accident. The deputies transported Bodman to the Ionia County Jail, where he was booked and housed pending his trial.

On January 1, 2010, while confined at the jail, Bodman suffered a seizure for the first time in his life. Jail officials moved Bodman to a holding cell, where he remained overnight for

---

[1] The Eighth Amendment applies only to post-conviction inmates and not to pretrial detainees such as Bodman. *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 531 (6th Cir. 2012). However, pretrial detainee claims "are analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Billegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

observation. Corrections Officer Rickert completed a medical slip and sent it to the jail nurse. Bodman did not receive any medical treatment, nor did medical staff evaluate him to ascertain the cause of the seizure. After one night in the holding cell, Bodman was returned to his housing unit and placed in a cell with a lower-bunk assignment. Bodman was given a copy of the medical slip, which contained a note at the bottom from the jail nurse stating, "Must stay on bottom bunk – no stairs." Bodman mailed his copy of the medical slip to his home. A copy of the slip was also placed in Bodman's jail medical file.

On January 13, 2010, Defendant Badder, acting pursuant to instructions, told Bodman to move to another cell with a top-bunk assignment. Bodman told Badder that he needed a bottom-bunk assignment because he had suffered a seizure and the nurse had ordered that he stay on a bottom bunk. Around the time Bodman was moved, other prisoners also informed Badder that Bodman was not supposed to be assigned to a top bunk. Bodman, however, did not show Badder his copy of the medical slip containing the nurse's note because he had mailed it home. Badder responded that she didn't really care because she needed Bodman's bottom bunk and that Bodman would be fine. She never checked to determine whether Bodman and the other inmates were telling the truth. Thereafter, Bodman complied with Badder's order and moved to the top bunk in cell 3.

Between his top-bunk reassignment on January 13, 2010 and March 29, 2010, Bodman did not complain to the jail medical staff about his top-bunk assignment.

On March 29, 2010, Bodman suffered a second seizure and fell out of his top bunk, landing on his head. Bodman was transported to the Ionia County Memorial Hospital for treatment. Bodman returned to his unit after about a week in the hospital. For several months following his fall, as a result of the injuries and pain that he suffered from falling out of his top bunk, Bodman was

unable to perform many of his daily activities, or required assistance from other prisoners to perform them.

## Conclusions of law

Bodman claims that Badder violated his right to be free from cruel and unusual confinement under the Due Process Clause of the Fourteenth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 352, 101 S. Ct. 2392, 2402 (1981). Such conduct includes a prison official's deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). There are two components to a deliberate-indifference-to-serious-medical-needs claim, one objective and one subjective. *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008). To satisfy the objective component, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Ford v. Cnty. of Grand Traverse.*, 535 F.3d 483, 495 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective prong requires the plaintiff to show that the defendant had a "degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994)).

Bodman has established both components of his deliberate-indifference claim. First, his medical need was sufficiently serious to invoke his protection against cruel and unusual conditions of confinement. As noted, prior to the time Badder reassigned Bodman to a top bunk, Bodman suffered a seizure, which itself presented a serious medical condition. As the jail nurse recognized, a prisoner who suffers a seizure while on a top bunk would be subjected to a serious risk of injury. As for the subjective component, Bodman (and other prisoners) notified Badder that Bodman should not be placed on a top bunk because he had previously suffered a seizure and that the nurse had

ordered that Bodman be given a bottom-bunk assignment. Although Bodman did not *anticipate* a second seizure, as the nurse's order indicates, the potential for Bodman to suffer a second seizure certainly existed, and the risk of harm if he suffered a seizure while on a top bunk was patent. Badder had plenty of time and opportunity before Bodman suffered the second seizure to inquire of the jail's medical staff whether the nurse had, in fact, issued a bottom-bunk order for Bodman. In short, Badder was aware of the risk but chose to ignore it.

### DAMAGES

Although Bodman did not make a specific request for damages, his own testimony suffices to establish that he experienced pain and suffering, as well as emotional distress, as a result of Badder's constitutional violation. The Court concludes that an award of $4,500—$50 per day for 90 days, or approximately three months of suffering—is adequate compensation for the injury that resulted from Badder's violation. However, the Court will reduce Bodman's damages by an amount reflecting his own failure to take action to protect himself. As Bodman acknowledges, he remained in his top-bunk assignment for more than 70 days without incident. Yet, during that time, Bodman took no action to try to alleviate his risk of harm, even though he had two avenues for doing so. Bodman could have kited the jail nurse to notify her that he had been placed on a top-bunk assignment in violation of her order. Bodman also could have contacted his family to obtain his copy of the medical slip that he sent home, in order to show jail staff that he had a medical detail for a lower bunk, but he failed to do so. Common sense suggests that if Bodman had been truly concerned about a risk of falling out of the top bunk, he would have done *something*. It may be that any such action would have been futile, but that is doubtful considering his medical history and the nurse's note. Therefore, the Court concludes that a reduction of Bodman's compensatory damages in the amount of $2,250 is warranted.

The Court will not award Bodman punitive damages because Badder's assignment of Bodman to a top bunk was not a result of evil motive or intent nor a reckless or callous indifference to Bodman's federally-protected rights. *See Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983).

## Conclusion

In sum, Bodman is entitled to recover $2,250 in compensatory damages from Badder for her deliberate indifference to Bodman's serious medical needs.

An appropriate judgment will enter.

Dated: February 12, 2014                               /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE